UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALDINA CAGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CV157SNLJ |
| | ) | |
| POPLAR BLUFF TOOL & DIE CO., , | ) | |
| ET. AL., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff has filed this ERISA action alleging that defendants have wrongfully denied her claim for long-term disability benefits pursuant to 29 U.S.C. §1132 (a)(1)(B). Counts I and II of her complaint are against defendant Unum Life Ins. Co. for failure to pay claim benefits and for breach of fiduciary duty, respectively; and Count III is against defendant Poplar Bluff Tool & Die Co. for failure to provide plan documents. This matter is before the Court on defendant Poplar Bluff Tool & Die Co.'s (hereinafter referred to as defendant PBTD) motion to enforce settlement agreement (#29), filed June 19, 2008. Responsive pleadings have been filed.

On or about March 17, 2008 this cause of action was referred to ADR[1] for possible settlement. An ADR settlement conference was held among the parties on or about April 8, 2008 but no settlement was reached. *See*, ADR Compliance Report (#24), filed April 16, 2008. However, on or about June 3, 2008 settlement discussions resumed between plaintiff and defendant PBTD. Telephone communications consisting of an exchange of offers and

---

[1]Alternative Dispute Resolution

counteroffers by the interested parties' counsel continued back and forth between June 3, 2008 and June 6, 2008.

These exchanges appear to have resumed in earnest and reached a crucial point on June 6, 2008. After a series of revised offers and counteroffers, plaintiff's attorney made a revised counteroffer of $17,500.00. Upon further discussion, the parties' attorneys agreed that this dollar amount included plaintiff's attorneys' fees in this matter. The matter of additional "release" terms were discussed. PBTD's counsel attests that three (3) salient points were discussed and agreed upon: 1) defendant PBTD would no longer have to provide the Summary Plan Description or the Form 5500[2]; 2) the $17,5000.00 included any and all attorneys' fees claimed by the plaintiff; and 3) plaintiff would execute a Full General Release waiving any and all present claims whatsoever against defendant PBTD. Defendant's counsel further attests that it was agreed upon that defendant's counsel would prepare the Settlement Agreement, including the Full General Release for plaintiff's execution.

Defendant's counsel prepared such a document and forwarded to plaintiff's counsel on or about June 12, 2008. Although counsel differs slightly on the timeline, it appears that on or about June 13, 2008 plaintiff's counsel acknowledged receipt of the documents, and indicated that he was going to scan same to e-mail to plaintiff for her review. On or about June 16, 2008 plaintiff's attorney advised defendant's attorney that plaintiff was refusing to sign the settlement papers. Further discussion ensued and it appeared that plaintiff was refusing to sign the papers because the Full General Release included language waiving all claims not only against defendant PBTD, but also "its parent, subsidiary, and/or all affiliated companies and their respective representatives, divisions, agents, employees, attorneys, directors, officers, successors,

---

[2]These two documents are the subject of plaintiff's claim in Count III.

assigns and other affiliates of and from any and all actions, causes of action (whether in law, by common law, or pursuant to federal or state statutes, or in equity) . . .".[3] Plaintiff was refusing to sign the settlement papers because she did not want to foreclose the possibility of filing another workers' compensation claim in the future based upon an occupational disease, or to foreclose her ability to assert a "premises liability" personal injury claim against defendant PBTD, or its alleged parent company Davis Tool & Die (a non-party to this lawsuit) for (future) alleged respiratory injury or disease.

Defendant PBTD's counsel attests that the terms of the Full General Release had been discussed with plaintiff's counsel, that he had made it clear that such a release was a precondition to any settlement with plaintiff, and that the Full General Release language represents the understanding reached between counsel. Plaintiff's counsel attests that plaintiff has, from the very beginning of this lawsuit, asserted that defendant PBTD has a parent company (Davis Tool & Die), that she won't settle if it would preclude her from bringing some type of personal injury or workers' compensation claim against this alleged parent company, and that counsel did not discuss the terms of the release insofar as it included a waiver of any and all claims against this alleged parent company.

Settlement agreements are governed by contract law. Chaganti & Associates v. Nowotny, 470 F.3d. 1215, 1221 (8th Cir. 2006); Visiting Nurse Assoc., St. Louis v. VNAHealthcare, Inc., 347 F.3d. 1052, 1053 (8th Cir. 2003); Sheng v. Starkey Laboratories, 117 F.3d. 1081, 1083 (8th Cir. 1997); MIF Realty L.P. v. Rochester Associates, 92 F.3d. 752, 756 (8th Cir. 1996); Tirmenstein v. Central States Basement and Foundation Repair, 148 S.W.3d. 849, 851 (Mo.App.

---

[3]The entire waiver language is in Paragraph 4 of the Settlement Agreement and General Release, Defendant's Exhibit B (#30-3).

2004). "The essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement." Chaganti & Associates, at 1221. In order for a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal. Sheng v. Starkey Laboratories, 117 F.3d. at 1083; Sheng v. Starkey Laboratories, 53 F.3d. 192, 1194 (8th Cir. 1995); MIF Realty, at 756. Even if the parties have left some details for counsel to work out through further negotiation, a legal, valid settlement agreement still exists. Sheng v. Starkey Laboratories, 117 F.3d. at 1083; Worthy v. McKesson Corp., 756 F.2d. 1370, 1373 (8th Cir. 1985); *see also*, Nwachukwu v. St. Louis University, 114 Fed.Appx. 264 (8th Cir.2004)(unpublished opinion holding that a valid settlement agreement existed "even though the final agreement contained more expansive or additional clauses related to confidentiality, release of liability, disclaimer of fault, nondisparagement, and reinstatement or reemployment)[4]; Johnson v. Dobson, et. al., 230 F.3d. 1363 (8th Cir. 2000)(unpublished opinion holding that the "parties entered into a valid, oral, global-settlement agreement on May 14, notwithstanding minor later-resolved issues."); Vulgamott v. Perry, 2004 WL 2792193 (Mo.App. Dec. 7, 2004)(unpublished opinion finding that "[a] contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning."). Finally, the party requesting enforcement of a settlement agreement has the burden of proving its claim for relief by clear, convincing, and satisfactory evidence. Visiting Nurse Association, St. Louis, at 1053

---

[4]It is not the Court's usual practice to cite to unpublished opinions except in those rare circumstances wherein the unpublished opinion provides the Court with significant assistance in addressing the issues at hand. In this case, the unpublished opinions cited by the Court were instrumental in assisting the Court in arriving at its ultimate determination regarding the instant motion.

4

(citations omitted); Tirmenstein, at 851 *citing* Payne v. E&B Carpet Cleaning, Inc., 896 S.W.2d. 650, 651 (Mo.App. 1995).

In the instant matter, the parties dispute only whether there was a "mutuality of agreement". "Mutuality of agreement requires a `mutuality of assent by the parties to the terms of the contract,' i.e.; `a meeting of the minds.'". Chaganti & Associates, at 1221 *quoting* L.B. v. State Comm. of Psychologists, 912 S.W.2d. 611, 617 (Mo.App. 1995). When determining whether a "meeting of the minds" between the parties took place, a court should look to the intentions of the parties "as expressed or manifested in their actual words or acts and not upon the understanding or supposition of one of the parties." Chaganti & Associates, at 221 *quoting* L.B. v. State Comm. of Psychologists, at 617; Semi-Materials Co., Ltd. v. MEMC Electronic Materials, 2008 WL 723826 (E.D.Mo. 2008) *quoting* L.B. v. State Comm. of Psychologists, *supra*.

Upon review of the parties' pleadings, counsel's affidavits, and the submitted exhibits, the Court finds that the parties did not come to a "meeting of the minds" on a very significant material term; i.e., the language of the Full General Release, especially as it regards any future claims against a "parent corporation, subsidiary, etc.". Plaintiff, from the beginning of this lawsuit, has steadfastly maintained a position that another corporate non-party entity may be partially held responsible for her alleged medical problems. Nothing before the Court indicates

that she has wavered from this firm belief.[5] The Court determines that the parties did not achieve a settlement in this case.[6]

In light of the filing of its motion to enforce settlement agreement, defendant PBTD did not file a response to the plaintiff's outstanding summary judgment motion against it. *See*, Document #26, filed May 30, 2008. The Court will grant defendant PBTD, up to and including, April 30, 2009 to file its responsive pleading.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Poplar Bluff Tool & Die Co.'s motion to enforce settlement agreement (#29) be and is **DENIED.**

**IT IS FINALLY ORDERED** that defendant Poplar Bluff Tool & Die Co. is hereby granted leave to file a response to plaintiff's motion for summary judgment (#26) on or before April 30, 2009. No extensions of time shall be granted except for good cause shown.

Dated this <u>30th</u> day of March, 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[5]Whether or not another non-party entity may be held liable for a future claim of personal injury by plaintiff is totally irrelevant to the issues in this lawsuit. Furthermore, the Court advises the parties and their counsel to refrain from speculations and conjectures as to motives for filing pleadings, engaging in settlement negotiations, etc. Finally, the Court is only interested in proper legal argument, not colorful or inflammatory rhetoric regarding opposing counsel or party.

[6]Defendant contends that it is ready to tender the settlement check for $17,500.00; while plaintiff contends that she is ready to accept said check based upon the release being modified to only release defendant PBTD from her claims as contained in Count III of her complaint. Given the posture of this case, the Court is not inclined to find a settlement reached under Court-amended terms.