**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ALDINA CAGLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:07CV157SNLJ** |
| | ) | |
| **UNUM LIFE INS. CO. OF AMERICA** | ) | |
| **and POPLAR BLUFF TOOL & DIE CO.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Plaintiff filed this ERISA[1] alleging that defendant Unum Life Insurance Co. of America (hereinafter referred to as Unum) breached its contract with her, as well as breached its fiduciary duty to her, when it denied her long-term disability payments under a group insurance policy. Plaintiff further alleges that defendant Poplar Bluff Tool & Die Co. (hereinafter referred to as PBTD) violated certain provisions of ERISA by failing to provide her with a summary plan description and plan document (SPD) upon her request. This matter is before the Court on defendant Unum's motion for summary judgment (#36), filed September 12, 2008 and plaintiff's motion for summary judgment directed to defendant Unum (#38), filed September 13, 2008. Responsive pleadings have been filed in connection with both summary judgment motions.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing

---

[1]Employment Retirement Income Security Act, 29 U.S.C. §§1001 *et. seq.*

factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); see, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) citing Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th

Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment."). The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

The material facts in this case are largely undisputed.[2]

Plaintiff Cagle worked as an office manager for PBTD, and by virtue of her employment with PBTD, was a participant in the Davis Tool & Die Co. Long-Term Disability Plan (hereinafter referred to as the Plan). The Plan provides disability income benefits to eligible employees of Davis Tool, including eligible employees of PBTD.[3] The Plan insurer and administrator is defendant Unum.

The Plan grants Unum discretionary authority to make benefit determinations and interpret the terms and provisions of the Policy. UACL 703-733 (subject Policy). The Policy states: "When making a benefit determination under the policy, UNUM has discretionary

---

[2]The only factual dispute evident is plaintiff's belief that UnumProvident Corp., and not defendant Unum, reviewed plaintiff's medical records and made the decision to deny the subject benefits. This "factual dispute" will be addressed later in this memorandum.

[3]The parties have agreed defendant Unum's Exhibit 1 is the submitted Administrative Record in this case. The Administrative Record is comprised of Bates numbers "UACL 1-764". When necessary, specific portions of the Administrative Record will be cited using the afore-referenced citation.

authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." UACL 724.

Under the Policy, "disabled" is defined as being "limited from performing the **material and substantial** duties of your regular occupation due to your **sickness** or **injury**; and you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury." UACL 720. The Policy further defines "material and substantial duties" as duties that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, UNUM will consider you able to perform that requirement if you are working or have the capacity to work for 40 hours per week." UACL 705. The Policy further defines "regular occupation" as "the occupation you are routinely performing when your disability begins." UACL 704. Finally, the Policy, in applying the term "regular occupation" when determining eligibility for benefits, states that "UNUM will look at the occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." UACL 704.

As an office manager, plaintiff performed general office duties, including sitting for six hours a day, answering the office phone, sending and receiving facsimiles, making copies, etc. UACL 740-43. On or about October 4, 2004, following a period of receiving short-term disability payments, plaintiff applied for long-term disability benefits asserting that she could not work due to allergic airway disease, severe allergies, and thyroid disease which cause shortness of breath, dizzy spells, chest pain, and hives/itching. UACL 747. The claim documents provided by plaintiff to Unum included the Employer's Statement, Claimant's (Plaintiff's) Statement, Attending Physician's Statement, Form W-2 for the year 2003, and the Employer's Job Analysis.

UACL 740-50. The Attending Physician's Statement was prepared by Dr. Darwin Davis, plaintiff's primary care physician, and reflects a diagnosis of asthma. The Attending Physician's Statement also shows that plaintiff's first visit was on January 25, 2004 and her last exam was on September 3, 2004. Finally, in terms of any restrictions or limitations, Dr. Davis notes that plaintiff should avoid exposure to exacerbating components of asthma and that she cannot work in an environment that has elements that cause worsening of her symptoms. UACL 662, 746. Dr. Davis does not identify the "exacerbating components"nor does he identify the "elements that cause worsening of her symptoms".

On October 13, 2004, Benae Francis, a Senior Disability Benefits Specialist for Unum, spoke with plaintiff concerning her long-term disability claim. Plaintiff stated that she could not work for her employer due to chemical content in the air. She stated that she had "regular allergies" which "progressed to environmental allergies". She stated that she was "very sick" in November 2003 and placed on medications. She stated that she had a respirator at home which she used when her husband did the house cleaning. She further stated that she no longer went grocery shopping because of cleaners on the floor. She further listed irritants as aerosols, burning candles, perfumes and colognes, household cleaners, chemicals, dust, mold, trees, weeds, and grass. She further stated that she no longer spent any time outside and would become "very sick when she comes in contact with any kind of chemicals on skin or in the air." Finally, she stated that "[l]ots of chemicals, mold and metal dust were found in the air at work." UACL 681-82. Plaintiff listed her conditions to include allergic airway disease, occupational asthma, and auto-immune disease. UACL 681-82.

On or about October 12, 2004 Benae Francis, on stationary with a "UnumProvident" logo, sent a request to Dr. Davis seeking additional information pertaining to plaintiff's claim.

This letter sought the following:

1) all office notes, including history and physical exams
2) consultations by any physician
3) copies of reports of all diagnostic tests
4) copies of all flow charts
5) copies of all treatment notes, procedure notes and operative reports
6) copies of any hospital records in the file, including admission and
   discharge reports
7) current restrictions and limitations
8) current return to work plan

UACL 678-79. The letter is signed by Ms. Francis, as Senior Disability Benefits Specialist for Unum Life Insurance Company of America. UACL 678.

On October 18, 2004, Unum received medical records from Dr. Davis containing the following information: (UACL 652-679)

1) Office visit on June 1, 2004 noting (among others) a diagnosis of asthma and noting that plaintiff "needs out of present environment."

2) Office visits on June 4 and June 14, 2004 for follow-up regarding thyroid disease.

3) Office visit on July 8, 2004, follow-up for asthma and thyroid lab work.

4) Office visit on August 18, 2004, follow-up for asthma and thyroid.

5) Office visit on September 3, 2004 for general health.

6) Report form dated June 9, 2004 indicating "thyroid nodules".

7) A copy of an evaluation from Dr. Al-Kilani, an endocrinologist, relating to a July 6, 2004 office visit. According to this evaluation, plaintiff presented with a thyroid nodule which had been detected on an ultrasound. Dr. Al-Kilani notes that the nodule(s) are really small and less than clinical detection and measuring about 2-3 millimeters in dimension. Dr. Al-Kilani repeated the thyroid profile and noted that he would treat plaintiff on an "as-needed basis".

> 8) Letter from Dr. Davis to PBTD dated June 9, 2004 in which he
> noted a diagnosis of asthma and that plaintiff has shown no significant
> improvement despite being treated with multiple medications.  Dr. Davis
> also notes that plaintiff's symptoms have been made worse by occupational
> exposure and the symptoms improve significantly when plaintiff is away
> from the work environment.  Dr. Davis advised that plaintiff cease
> employment at the PBTD facility.

Dr. Davis billed defendant Unum $24.69 for copies of plaintiff's medical records.  UACL 652.

On or about October 26, 2004, again on stationary bearing UnumProvident logo, Ms. Francis sent a similar request for medical records to Dr. Mary Kleinhenz, a pulmonologist identified by the plaintiff. Again, Ms. Francis signed the letter as the Senior Disability Benefits Specialist for defendant Unum.  Also, as with the letter sent to Dr. Daniels, this letter also directed that the requested information be forwarded to "Unum Life Insurance Company of America, The Benefits Center".  UACL 746-47.

On or about December 3, 2004 defendant Unum received certain medical records from Dr. Kleinhenz.  They included the following:

> 1) An office visit/evaluation on May 20, 2004, at which point plaintiff's
> problems include allergic airway disease, environmental exposure to dust,
> mold, and other immunogens, possible sarcoidosis, acne and medication
> intolerance.  Plaintiff's lab work was normal.  A CT scan showed no
> evidence of any lymphadenopathy.[4] Plaintiff's pulmonary function study
> was within normal limits.  In terms of the assessment/plan, Dr. Kleinhenz
> noted that plaintiff may have allergic airway disease and/or
> bronochiectasis, as a complication for pronounced environmental
> exposures.  Plaintiff underwent a methacholine bronchioprovocation test[5]

---

[4]Parties do not dispute the medical definition of "lymphadenopathy" as a condition where lymph nodes swell into two or more areas of the body.  *See*, **www.webmd.com**.

[5]Parties do not dispute the medical definition of a "methacholine brochiprovocation test" as a lung function test for asthma.  It may be performed if the patient's symptoms and screening spirometry do not clearly or convincingly establish a diagnosis of asthma.  Methacholine is an agent that, when inhaled causes the airways to spasm and narrow as if asthma is present.  During the test, a person inhales increasing amounts of methacholine aerosol mist before and after spirometry.  The methacholine test is considered positive, meaning asthma is present, if the lung

which turned out positive.  As a result, plaintiff was started on asthma medications (Advair inhaler and Combivent inhaler). \ Dr. Kleinhenz also noted that plaintiff "pressed me quite strongly to write a note indicating that she had asthma in hopes that her employer would clean the workplace, which is frequently contaminated by standing water, moisture problems, and mold.  I exceeded to that request." UACL 623-25.

2) A Supplemental Attending Physician Statement dated November 23, 2004, which refers back to the May 20, 2004 evaluation and notes objective findings to include methacholine bronchioprovocation, positive for airway hyper-responsiveness with symptoms including shortness of breath.  This Statement also notes that plaintiff is being treated with medications and that she could return to work as of May 20, 2004, so long as she avoids exposure to mold and seasonal allergies.  UACL 628.

3) An Estimated Functional Abilities Form dated November 23, 2004,[6] which indicates that plaintiff has sedentary capacity.  Further comment is noted that plaintiff has airway responsiveness and describes a work environment with poor ventilation/hygiene.  Dr. Kleinhenz recommends that plaintiff consider a workplace evaluation if symptoms continue.  Finally, Dr. Kleinhenz notes that plaintiff has not been seen since May 20, 2004 and that she should be treated for airway responsiveness.  UACL 626-27.

4) A Pulmonary Function Test dated April 30, 2004. UACL 620-21.

5) A report regarding "Bronchial Hyper Reactivity" dated May 20, 2004. UACL 618-19.

On or about December 6, 2004, Benefit Specialist Francis reviewed the entire Claim File with one of defendant Unum's on-site nurses, Janice Albert.  UACL 613-14.  The entire Claim File was reviewed, in its entirety, for a second time by another on-site nurse, Rechelle Swan.  Nurse Swan notes that the "[P]ulmonology are avoid exposures to perrenial **[sic]** mold and

---

function drops by at least 20%.  A broncodilator is always given at the end of the test to reverse the effects of the methacholine.  *See*, **www.webmd.com.**

[6]Both the Supplemental Attending Physician Statement form and the Estimated Functional form have the "UnumProvident" logo on them.

seasonal allergies, claimant has been released to RTW[7]. These are reasonable to support. It indicates that claimant was released as of 5/20/04." UACL 593.

Based upon the entire medical claim file on hand, Unum determined that plaintiff was not eligible for long-term disability benefits pursuant to the subject Policy. On or about December 8, 2004, this decision was approved by Francis' supervisor, Tracy Lynn Sawyer. UACL 591.

On or about December 8, 2004 a letter denying plaintiff's claim was sent to her by Ms. Francis.[8] The letter begins by setting out the Policy definitions as contained under the large, boldface policy section entitled "How Does Unum Define Disability?". The letter further notes plaintiff's claim is for long-term disability benefits due to allergic airway disease, severe allergies, asthma [exposure to dust, mold, fumes, smells] and auto-immune thyroid disease. It further notes that plaintiff's medical complaints are that during an environmental reaction, she is unable to breath, has dizzy spells, chest pain, and hives over most of her body. UACL 588-89. It further notes that Unum has received and reviewed "medical records from your attending physicians as well as an attending physicians statement dated November 23, 2004, and signed by Dr. Kleinhenz, Pulmonologist. Restrictions and limitations given are: avoid exposures to perennial mold and seasonal allergies. It is also noted that you have not been seen by your pulmonologist since May 20, 2004, at which time she released you to return to work with the above restrictions and limitations." UACL 588. The letter further states that:

> "Our review finds that you have been released to return to work on May 20, 2004. The restrictions and limitations, given at the time of your release, do not preclude you from performing your own occupation. As a result, you do not meet the policy's definition of disability and

[7]Return To Work

[8]Again, this letter bores the "UnumProvident" logo and is signed by Ms. Francis as Senior Disability Benefits Specialist for Unum Life Insurance Company of America.

we must, therefore, deny Long Term Disability benefits."

UACL 588.  Finally, the letter states:

> "In order for us to provide the best customer service and to assist
> you with your return to work efforts, we contacted your employer to
> to see if OSHA air quality testing has been completed.  They confirmed,
> as a result of your request, that the air quality testing has been completed
> and nothing was found.  We also asked your employer if there was an
> accommodated position that you may return to, they indicated that there
> was nothing available and that you had been terminated as a result of
> your Worker's Compensation claim.  This issue becomes one of
> employment and not impairment."

UACL 588.  The letter concludes by providing plaintiff with information regarding her appeal

rights.

On or about December 14, 2004 Francis received a phone call from plaintiff regarding the

denial letter of December 8, 2004.  Plaintiff indicated that she would have her workers'

compensation attorney send Francis additional medical information.  She further told Francis that

the air testing had not been completed, contrary to what was stated in the denial letter.  She

further told Francis that she was still very sick and not working.  UACL 577.

There was some confusion regarding the air testing at PBTD, and the wording of the
December 8, 2004 letter as to plaintiff's workers' compensation claim and her

employment termination.  Mr. Eric Boston (substituting for Ms. Francis) spoke with Arlene

Hardacker at McKellan Group (PBTD's insurance broker) about whether plaintiff had been

terminated due to her workers' compensation claim.  Apparently, the disputed paragraph in the

letter was poorly drafted and plaintiff's claim file (with Unum) only noted that McKellan Group

had simply advised that plaintiff could not be accommodated.  Mr. Boston "advised Arlene that

the intent of the paragraph was to advise that the insured's occupation was that of an office

manager, and that exposure to the environmental elements in a tool and die shop were not

material and substantial duties of her occ[9] as an office manager.  Mr. Boston clarified that Unum had not intended to give the impression that plaintiff had been terminated due to her workers' compensation claim or as a "whistleblower" or that any such information had ever been received from McKellan. UACL 571.

On or about January 27, 2005 plaintiff again spoke with Ms. Francis about her denial letter.  Plaintiff was concerned about the letter being misleading; i.e. that she had been terminated due to her workers' compensation claim.  Francis assured her that the letter had been poorly drafted, but that it was only intended to mean that a workers' compensation claim had been submitted at the same time as her long-term disability benefits claim, and that "during the process she was terminated."  UACL 560-61; 551.  There was some discussion regarding whether or not the OSHA air testing had been completed.  Plaintiff further expressed concern that Unum had relied upon Dr. Kleinhenz' report, and not Dr. Davis' report; and that Dr. Davis had additional medical information.  Ms. Francis informed the plaintiff that all her doctors had been faxed the same forms requesting the same type of medical information, and that different medical offices will respond with different information or in some cases, incomplete information. Ms. Francis explained to plaintiff that the benefits decision is made based on the information currently in the claim file, and that if there were additional diagnostic test results and office notes not sent by Dr. Davis' office, such additional information could be sent and would be reviewed. UACL 559-60.

---

[9]occupation

On or about March 18, 2005 Unum received additional medical information, which consisted of the entire medical file of Dr. Davis.[10]  New information contained in the medical records received in March 2005 included the following:

> 1) Office visit (Dr. Davis) in July 2003 indicating treatment for depression.  UACL 511.
>
> 2) Office visit (Dr. Davis) on October 8, 2003 for sinusitis. UACL 512.
>
> 3) Office visit (Dr. Davis) on January 27, 2004 noting follow-up for depression, hair loss, weight gain and chronic neck pain.  UACL 513.
>
> 4) Office visit (Dr. Davis) on January 29, 2004 for bronchitis and sinusitis.  UACL 514.
>
> 5) Chest x-ray taken on January 29, 2004 which indicated no evidence of acute cardiopulmonary process.  UACL 494.
>
> 6) Diagnostic Imaging Report dated January 29, 2004 indicating a cough and congestion of nasal turbinates.  UACL 491.
>
> 7) Office visit (Dr. Davis) on February 13, 2004 complaining of night sweats, malaise and depression.  UACL 515.
>
> 8) Office visit (Dr. Davis) on February 23, 2004 noting shortness of breath and night sweats.  UACL 516.
>
> 9) Chest CT scan on February 23, 2004 which showed no evidence of acute infiltrates.  UACL 499.
>
> 10) Office visit (Dr. Davis) on March 15, 2004 indicating shortness of breath, cough, which is worse while at work, and was better while plaintiff was on vacation.  UACL 517.
>
> 11) Office visit (Dr. Davis) on March 31, 2004 follow-up for shortness of breath.  UACL 518.

---

[10]When plaintiff had spoken with Ms. Francis in January, plaintiff has stated that Dr. Davis had not gotten the October letter requesting certain medical files/information, and that was why his medical records were incomplete in the claim file.  Ms. Francis agreed to refax the original October letter to Dr. Davis' office, and apparently this March 2005 documentation is in response to the refaxed letter.  UACL 533; 554.

12) Office visit (Dr. Davis) on November 1, 2004 for sinusitis and urinary infection. UACL 525.

13) Office visit (Dr. Davis) on December 23, 2004 for sinusitis. UACL 526.

14) Office visit (Dr. Davis) on January 28, 2005 for general health issues. UACL 527.

15) Pulmonary consultation with Dr. Dennis Daniels dated March 19, 2004. Dr. Daniels notes a differential diagnosis which includes sarcoidosis[11], especially with a history of swollen lymph nodes underneath the chin and neck, night sweats, generalized malaise without weight loss. Dr. Daniels treatment plan, as of March 19, 2004, included lab work, breathing tests, and referral to a rheumatologist. UACL 467-70.

16) Evaluation by Dr. Kleinhenz dated April 22, 2004, noting that plaintiff was referred for possible sarcoidosis. Dr. Kleinhenz' treatment plan included further evaluation for probable sarcoidosis along with repeat of the CT scan of the chest. Dr. Kleinhenz also noted possible allergic airway disease. UACL 472-74.

17) Functional ability test performed by Ozark Physical Therapy dated February 15, 2005. UACL 528-29.

18) Supplemental Attending Physician Statement from Dr. Davis dated February 21, 2005. In this Statement, Dr. Davis notes that plaintiff suffers from asthma with suspected multiple chemical sensitivity. Objective findings included a positive methacholine challenge test with symptoms including increased shortness of breath and fatigue. Plaintiff's last visit with Dr. Davis was on January 28, 2005 and reflected treatment with multiple medications. As for restrictions and limitations, Dr. Davis noted that plaintiff should avoid exposure to exacerbating components of her asthma and that she cannot work in an environment that has elements that cause worsening of her condition. UACL 531.

On or about July 12, 2005 Unum received a letter from plaintiff's attorney Sheila Ray

Blaylock inquiring why hadn't plaintiff and counsel heard from Unum regarding plaintiff's

request for appeal sent by letter dated March 10, 2005. For whatever reason, the March letter had

---

[11]The parties do not dispute the medical definition of "sarcoidosis" as a chronic disease that affects multiple systems in the body. It is characterized by the buildup of immune-system cells in organs. These cells form small groups of granulomas, a type of inflammation of the involved tissues. *See*, **www.webmd.com.**

not been received; however, upon receipt of this follow-up letter, Christopher Mullen (Lead Appeals Specialist for Unum) informed plaintiff and her counsel that Unum would begin the appeal process. UACL 446; 451-52.  On or about July 19, 2005 Appeals Specialist Mullen requested a medical file review, and on or about July 21, 2005 began a review of the entire medical file with Nurse Bethany Washburn.  UACL 440; 442-43.  Nurse Washburn and Appeals Specialist Mullen noted that the file presents restrictions and limitations to include avoiding exposure to exacerbating components of asthma and inability to work in an environment that has elements that cause worsening symptoms.  Furthermore, they note that the file indicates that plaintiff should avoid exposure to perennial and seasonal allergies.  UACL 440.  The claim file was then referred for a medical/clinical review to be followed by a physician review.  UACL 440.

On or about July 25, 2005 the entire claim file was reviewed by Nurse Laura Mininni, with a recommendation that the file be referred to a physician for further clarification on any restrictions and limitations.  UACL 433-438.

On or about August 2, 2005 Pamela Crownover, an Independent Assessment Coordinator for Unum, secured the services of Dr. Kathy Head of the Sharp Rees-Stealy Medical Group.  Dr. Head is a physician and surgeon licensed in California, and Board-certified in Occupational Medicine; as well as being a certified medical review officer, and a qualified medical examiner. UACL 400; 419; 421; 423.  In her letter of August 2, 2008, Ms. Crownover states that "Unum Life Insurance Company of America is requesting your expertise for a file review of one of our existing disability claims, Aldina Cagle."  UACL 416.

On or about August 9, 2005 Unum received Dr. Head's independent medical review report.  UACL 400-06.  In this report, Dr. Head agrees that plaintiff does have a diagnosis of reactive airways disease, supported by her positive methacholine challenge test; as well as

lymphadenopathy. UACL 401. However, Dr. Head notes that the medical records do not indicate specifically what allergens or irritants trigger plaintiff's condition. UACL 401. Dr. Head concludes that the restrictions and limitations that Dr. Davis had placed upon plaintiff[12] were not supported by objective evidence. UACL 401. Dr. Head stated that "[t]here is not enough information to say whether the claimant should be precluded from her previous work environment as there is no objective evidence that the claimant specifically had problems with her work environment." UACL 400. Dr. Head further stated that other than the reference to an allergy to mold, trees, weeds, and grasses, there was no further objective data regarding the types of allergies plaintiff has; i.e., the claim file provides no information which identifies the specific "components" that exacerbate plaintiff's condition, especially in the workplace. UACL 400. Dr. Head noted that "[A]dditionally, there are no medical records to indicate that the claimant had exacerbations for which she was medically treated after working at the machine shop . . . There is no documentation that the claimant had peak flow evaluations while she was at the work place. Lastly, there is no pre-work and post-work pulmonary function test conducted that would indicate any type of change in her lung functions consistent with reactive airway disease induced y **[sic]** her work environment." UACL 400.

On or about August 23, 2005 Mullen, on stationary with UnumProvident's logo, informed plaintiff's attorney that Unum was upholding the initial decision to deny benefits. UACL 386-89. The letter again sets forth the policy provisions regarding how Unum defines disability, reiterates plaintiff's claim for benefits based upon her reported condition of allergic airway disease, allergies "to most everything", asthma, and an auto-immune thyroid disease which was allegedly worsened by her work environment, and notes discussions with plaintiff

---

[12]Germane to this case, the avoidance of plaintiff's workplace at PBTD.

regarding her claim.  The letter further outlines the medical information received by the plaintiff's doctors in connection with the initial denial of benefits.  The letter further outlines the additional medical information received from Dr. Davis following the initial denial of benefits.  The letter further sets forth the reasoning for the denial of benefits on appeal:

> "The medical information provided from your client's physicians was reviewed by our consulting physician on appeal.  Based upon the information provided, our consulting physician concluded that the diagnosis of reactive airway disease is supported by the clinical evidence, specifically your client's positive methacholine challenge test.  However, the medical records do not indicate specifically what your client's allergic or irritant triggers are and it is noted that your client has a history of multiple allergies, including trees, grasses, weeds, and molds.  There is also no evidence of medical treatment for exacerbations of her symptoms after working.  As a result, out consulting physician concluded that there is no basis to support Dr. Davis' conclusion that your client should cease employment due to her symptoms having been made worse by occupational exposure at her work environment.  Based upon the data available, there is no evidence to support that it is your client's work environment that is causing her reactive airway disease to flare.
>
> Our consulting physician also noted that testing necessary to support that your client's work environment is the cause of her symptoms have not been completed.  These tests would include peak flow evaluations while she was at her workplace as well as pre-work and post-work pulmonary function tests.  Instead, the information available supports that testing completed at her workplace was negative for irritants. **[This is a reference to the OSHA air testing completed at PBTD]**.
>
> Ms. Blaylock, based upon the medical information provided, we have determined that restrictions and limitations precluding your client from performing her occupational duties are not supported.  Therefore, we must uphold our previous denial decision.
>
> Please also note that even if support was shown for your client's inability to return to her workplace, the occupation of an office manager does not require exposure to irritants as performed in the national economy.  As a result, your client would not be disabled from performing the material and substantial duties of her regular occupations as defined under the terms of the policy."

UACL 387.  Finally, the letter sets forth additional information regarding plaintiff's ERISA rights for judicial review, possible ADR options, and even allows for her to provide again

additional medical information for consideration; however, if such information wasn't received

by September 23, 2005, Unum would consider the appeal decision to be final. UACL 386.

On or about September 22, 2005 plaintiff's attorney forwarded to Unum more

"additional" medical records. UACL 155-372. Although many of these records were already

part of plaintiff's claim file, new medical information was as follows:

> 1) Office visit (Dr. Al-Kilani) dated October 7, 2004 regarding
> treatment for thyroid condition. UACL 265.
>
> 2) Office visit (Dr. Al-Kilani) dated December 9, 2004 follow-up
> regarding plaintiff's thyroid condition and notes indicating medication '
> to be increased. UACL 263
>
> 3) Office visit (Dr. Davis) dated March 15, 2005 for sinus infection.
> UACL 273
>
> 4) Emergency Room visit (Ripley County Memorial Hospital) dated
> April 17, 2005 relating to a sore throat. UACL 223-226
>
> 5) Medical records from Dr. Tipu Sultan, including an evaluation and
> detailed medical history dated April 19, 2005. UACL 161-180. Plaintiff's
> chief complaint is that many chemical odors bother her. UACL 177. Dr.
> Sultan's assessment was that the prior treatment plan had failed and that
> the prior diagnosis is not accurate. UACL 178. He determined that new
> labs and allergy testing were required. UACL 178.[13] He further gave plaintiff
> several forms and questionnaires to complete regarding her exposure history,
> employment history, and symptoms. UACL 178.
>
> 6) Medical records from Dr. Richard Wanderman, Mid-South Ecology
> and Pediatrics Center in Memphis, Tenn. UACL 155-59. Dr. Wanderman's
> records primarily include a self-reporting by plaintiff of her symptoms and a
> medical history of the plaintiff.

On or about October 5, 2005 Appeals Specialist Mullen sent a letter, on stationary with

UnumProvident logo, to plaintiff's attorney acknowledging receipt of the additional medical

---

[13]Receipt of the additional medical records in September 2005 did not include any lab test results or allergy testing results in connection with the lab tests and allergy tests referenced in Dr. Sultan's medical records.

records and informing her that another review would be undertaken.[14]  UACL 152.  On or about

October 14, 2005, the supplemented claim file, including all the additional medical records, was

forwarded to Dr. Head by Unum's Independent Assessment Coordinator Pamela Crownover.

UACL 144.  On or about October 25, 2005 Dr. Head forwarded to Unum her supplemental

report.  UACL 131-38.

In her supplemental report, Dr. Head indicates that Dr. Davis' medical conclusions are

still not supported by objective evidence.  She further indicates that Dr. Sultan's treatment plan

appears appropriate; however, the additional records in the present claim file before her do not

include any new lab tests results, allergy testing results, the exposure and employment histories,

or the chemical questionnaire referred to by Dr. Sultan in his notes.  Without this information,

Dr. Head was unable to change her prior assessment regarding Dr. Davis' restrictions and

limitations for the plaintiff, especially in connection with her continued employment at the PBTD

facility.  UACL 132.

On or about November 8, 2005 Appeals Specialist Mullen sent a letter to plaintiff's

attorney stating that based upon Dr. Head's supplemental review, the original decision to deny

benefits was once again upheld.  UACL 122-24.  In the letter, Mullen points out that, based upon

the limited additional information from Dr. Sultan, Dr. Head concluded that, while it is clear that

Plaintiff has reactive airway disease, there is still no objective medical evidence to determine

what specifically exacerbates the underlying disease.  UACL 123.  He further notes that without

any testing results to identify the specific irritants which would impact plaintiff's ability to

function (especially in the workplace), Dr. Davis' restrictions and limitations are still

unsupported by objective evidence.  Finally, Mullen informs plaintiff (via her attorney) that given

_____

[14]Mullen signed the letter as Appeals Specialist for Unum Life Insurance Co. of America.

the lack of any specific irritants, there is no objective evidence to support the notion that plaintiff's work environment is causing an exacerbation of her reactive airway disease. UACL 123.

On or about December 9, 2005 Unum received a letter from plaintiff's attorney with more "additional" medical records from Dr. Sultan. These records included:

> 1) An assessment from Dr. Sultan dated October 11, 2005 stating that plaintiff's workplace is the proximate cause of most of her illnesses, especially the chemical sensitivity. UACL 113. Dr. Sultan opined that plaintiff's respiratory allergies, rhinitis, sinusitis, and bronchial asthma are also the result of prolonged workplace exposure. UACL 113.

> 2) Exposure history, employment history, chemical exposure questionnaire and lab results which all had previously been referenced in the documents previously from Dr. Sultan. UACL 62-69; 72-84; 86.

> 3) Medical records pertaining to office visits with Dr. Sultan in September and October 2005. UACL 100-106.

On or about December 15, 2005 plaintiff's attorney forwarded to Unum a letter from Dr.Sultan dated October 31, 2005[15] in which Dr. Sultan opined that plaintiff has severe chemical sensitivity and that she is totally disabled and that this disability would continue for at least six (6) months or possibly longer. UACL 58-59.

In two (2) separate letters[16] dated December 16 and December 29, 2005, Mullen acknowledged receipt of the letter from Dr. Sultan dated October 31, 2005 and confirmed that Unum would once again review plaintiff's claim. UACL 52; 56. On or about January 5, 2006,

---

[15]There is no explanation in the pleadings filed with the Court or in the Administrative Record as to why this letter was not submitted by the plaintiff when she supplemented her claim file in December 2005.

[16] Again, stationary with UnumProvident logo and signed by Mullen as Appeals Specialist for Unum Life Insurance Co. of America.

the additional medical records received on December 9, 2005, as well as the letter from Dr. Sultan dated October 31. 2005 were again forwarded to Dr. Head for her review. UACL 49.

On January 18, 2006 Unum received Dr. Head's addendum report following her repeated review of plaintiff's claim file, including Dr. Sultan's additional medical records. UACL 36-41. For the third time, Dr. Head reaffirmed her decision that there was still no objective evidence to prove or disprove that plaintiff's employment had made her worse by occupational exposure at her work environment; nor is there a workup and explanation in Dr. Sultan's medical records regarding how he came up with the diagnosis of chemical sensitivity. She concluded:

> "Again my opinion stands that it is clear that Ms. Cagle has reactive airways disease, that there is no conclusive evidence regarding the chemical sensitivity diagnosis based on the information provided. Restrictions and limitations cannot be provided at this point as there has been no conclusive objective evidence to specifically determine what is exacerbating the claimant's reactive airway disease. Therefore, I cannot comment on this at this point; however, if there is more medical information available regarding the diagnosis of the chemical sensitivity, please feel free to forward this to me, and I would be happy to review it."

UACL 36.

On or about January 25, 2006 Mullen sent a letter[17] to Plaintiff' attorney advising that Unum's decision to deny benefits was again being upheld. UACL 27-29. Mullen set forth the extensive claim history including the recent medical information supplied by Dr. Sultan. Mullen summarizes as follows:

> "On September 24, 2005 your client discussed her symptoms of dizziness, nausea, headaches and rashes which she felt were caused by exposure in her workplace. Your client was not able to say what chemicals caused what symptoms, but she did indicate various days which her symptoms were worse. Dr. Sultan concluded

---

[17]Again, the letter was on stationary with UnumProvident logo and signed by Mullen as Appeals Specialist for Unum Life Insurance Co. of America.

that because of your client's severe chemical sensitivity, they were contemplating additional testing for her.

When your client returned on October 11, 2005 she again discussed her history and claim of exposure in the workplace. However, Dr. Sultan did not recommend any treatment beyond a referral to your client's family physician for evaluation of chest pain, and 'to look into candidiasis and magnesium deficiency'. Dr. Sultan also wrote a letter to Attorney Ron Little following this visit. Dr. Sultan noted that after a review of your client's history he had reached the conclusion that her exposure to her workplace is a proximate cause for most of her illness. Dr. Sultan also commented that your client would need additional evaluation in the form of chemical testing and blood tests.

Dr. Sultan then provided a note dated October 31, 2005 addressed `To Whom It May Concern'. In this note, Dr. Sultan concluded that your client has problems with severe chemical sensitivity and in his opinion she is totally disabled and unable to work at all.

On review of this information, in correlation to the previously submitted medical records, our consulting physician noted that while your client has relayed her symptoms to Dr. Sultan, there still has been no work up or explanation of how Dr. Sultan arrived ast a diagnosis of chemical sensitivity. In addition, there has been no testing to show that your client's condition was made worse by occupational exposure in her work setting, or that she has had any testing at her workplace. Finally, there has been no pulmonary function testing to support changes in lung function that would indicate your client has reactive airway disease induced by her work environment."

UACL 28. Mullen further points out that:

"In addition, we must also point out again that your client is claiming that she is unable to work due to exposure in her workplace. Because she would not reasonably be expected to be exposed to the same level of chemicals in a normal work environment while performing her job, it appears unlikely that she would meet the definition of disability even if the claim of workplace exposure was proven."

UACL. 28. After reiterating Dr. Head's conclusions, Mullen informs plaintiff of her litigation

and/or ADR rights; and finally informs her that "this represents our final review of your client's

appeal.  You have exhausted all administrative remedies in regards to your client's claim for Long

Term Disability benefits."  UACL 27-28.

On or about February 28, 2007 Unum was notified by plaintiff's current attorney Greg Oliphant of his representation of the plaintiff and requested a copy of the claim file. UACL 5. On or about March 9, 2007 a copy of the claim file was forwarded to Mr. Oliphant.  UACL 1.

Before addressing the legal issues before the Court, it is necessary to address plaintiff's argument that UnumProvident, a non-party, was the entity that collected the medical records, assembled and reviewed the claim file, and made all decisions (original and on appeal) denying plaintiff long-term disability benefits.  The Court disagrees with plaintiff's contention.

According to the Administrative Record, defendant Unum was at all times the entity that collected the medical records, assembled and reviewed the claim file and made all decisions (original and on appeal) denying plaintiff's long-term disability benefits.  There is no dispute that Benae Francis and Christopher Mullens were the key persons involved in the entire claim process from beginning to end; as well as the only persons plaintiff and/or her attorneys had contact with concerning plaintiff's claim file.  At all times, Ms. Francis represented herself as a Senior Disability Benefits Specialist for Unum, not UnumProvident.  At all times, Mr. Mullens represented himself as a Lead Appeals Specialist for Unum, not UnumProvident.  All correspondence was sent by either Francis or Mullens, and always identified them as defendant Unum representatives.  Invoices for medical records copies were sent to defendant Unum, and paid by defendant Unum.  It was defendant Unum that retained Dr. Head for her independent medical records review.

Plaintiff's only "evidence" to support her contention is that stationary and some forms had the UnumProvident logo on them. She provides no other objective evidence showing that either Francis or Mullens acted on behalf of UnumProvident or that any other person was involved in the claim process on behalf of UnumProvident. A corporate logo, in and of itself, does not make UnumProvident the claims administrator; and without more than this, the Court is not prepared to declare a non-party as the claims administrator.[18] The Court finds that defendant Unum, at all times during the relevant time-period, acted as the claims administrator in connection with plaintiff's claim for long-term disability benefits.

## Standard of Review

Under ERISA, when the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits, the district court reviews a denial of benefits for abuse of discretion. Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989); Wakkinen v. Unum Life Insurance Co. of America, et. al., 531 F.3d. 575, 580 (8th Cir. 2008); Rittenhouse v. United Health Group Long Term Disability Ins. Plan, 476 F.2d. 626, 628 (8th Cir. 2007). In the present suit, the parties do not dispute that the benefits plan gives defendant Unum the discretionary authority to determine the plaintiff's eligibility for long-term disability benefits and to interpret the plan. However, plaintiff argues that the Court should apply a *de novo* standard of review because of Unum's conflict of interest and/or procedural irregularities.

---

[18]In plaintiff's memorandum in support of her summary judgment motion (#39), plaintiff makes the statement: "Cagle asserts that UNUMPROVIDENT made the decision to deny her benefits and that there is a General Services Agreement between Unum Life Insurance Company of America and UNUMPROVIDENT, at the time the decisions were rendered, which allowed the claims personnel who worked for UNUMPROVIDENT to make decisions for Unum Life Insurance Company of America." Document #39, pg. 11. There is no exhibit before this Court which evidences such an agreement. Plaintiff has failed to provide any such written agreement, for the Court's review, to support this contention.

Plaintiff contends that a conflict of interest exists because Unum acted as both the plan administrator and the self-insured provider of benefits due under the subject plan. She argues that under the recent United States Supreme Court case <u>Metropolitan Life Ins. Co. v. Glenn</u>, - U.S. - , 128 S.Ct. 2343 (2008), a court must weigh the conflict giving it priority. Plaintiff has misread the import and application of <u>Glenn</u>, *supra.*

In <u>Glenn</u>, *supra.*, the Supreme Court held that a plan administrator which both evaluates claims for benefits and pays benefit claims (as Unum does) is operating under a conflict of interest. <u>Glenn</u>, 128 S.Ct. at 2348. The Supreme Court further held that the conflict does not change the standard of review applied by the district court. <u>Glenn</u>, 128 S.Ct. at 2350; <u>Wakkinen</u>, at 581 *citing* <u>Glenn</u>, *supra.*; *see also*, <u>Hackett v. Standard Ins. Co.</u>, 2009 WL 703235 (8th Cir. 2009). Rather, "a conflict should be weighed as a factor in determining whether there is an abuse of discretion." <u>Wakkinen</u>, at 581 *quoting* <u>Glenn</u>, 128 S.Ct. at 2350 (*quoting* <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. at 115); *see also*, <u>Hackett</u>, *supra.* "The importance of taking [Unum's] conflict of interest into account is illustrated by the `combination-of-factors method' employed by the Court in *Glenn*, where the conflict serves `as a tiebreaker when the other factors are closely balanced' and is `more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision' and `less important. . . where the administrator has taken active steps to reduce potential bias and to promote accuracy.'" <u>Hackett</u>, *supra. quoting* <u>Glenn</u>, 128 S.Ct. at 2351; *see also*, <u>Wakkinen</u>, at 582; <u>Warner v. Unum Life Insurance Co. of America</u>, 2009 WL 73666 (E.D.Mo. Jan. 8, 2009).[19]

---

[19]In her memorandum in opposition to defendant Unum's summary judgment motion, plaintiff wrongly suggests that the abuse of discretion standard requires not a "combination of factors" review, but rather a "substantial evidence" review as used in Social Security determinations of disability. Document #42, pg. 3. <u>Glenn</u>, *supra.* and its Eighth Circuit progeny have clearly rejected this notion.

Plaintiff argues that defendant Unum committed a number of procedural irregularities in considering her claim for long-term disability benefits: failing to tell her "in plain English" what evidence she should provide in support of her claim; failing to assist her in getting the further medical testing that Dr. Sultan suggested; failing to consider plaintiff' financial status in being able to obtain more medical testing; failing to get an independent medical review from a physician "the caliber of Dr. Sultan"; and failing to employ Dr. Sultan to do further testing on plaintiff "to answer defendant Unum's questions or doubts" about plaintiff's claim.[20]

"In determining whether procedural irregularities occurred, we consider whether the plan administrator's decision was made without reflection or judgment, such that it was the product of an arbitrary decision or the plan administrator's whim." Parkman v. Prudential Ins. Co., 439 F.3d. 767, 772 n. 5 (8th Cir. 2006)(internal citations omitted). "A claimant must offer evidence that `gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim' for us to apply the less deferential standard." Hillery v. Metropolitan Life Ins. Co., 453 F.3d. 1087, 1090 (8th Cir. 2006) quoting Chronister v. Baptist Health, 442 F.3d. 648, 654 (8th Cir. 2006)(quoting Woo v. Deluxe Corp., 144 F.3d. 1157, 1160 (8th Cir. 1998)). Such alleged procedural irregularities must be so egregious that it might create a total lack of faith in the integrity of the decision-making process. Hillery, at 1090 (quoting

---

[20]In her response, plaintiff raises additional perceived procedural problems which she believes served to deny her a "full and fair review". These additional procedural problems apparently are: 1) Unum failed to raise the issue of whether she could perform her duties as an office manager as it is performed in the national economy; 2) Unum did not provide, at its cost, a vocational expert as to how the job of an office manager is performed in the national economy; 3) Unum failed to obtain the services of an independent medical examiner to examine the plaintiff; and 4) Unum failed to speak to plaintiff's treating physicians. Plaintiff's Memorandum in Opposition (#42), pgs. 4-6. Since plaintiff did not note these "problems" as procedural irregularities requiring a standard of review different from an "abuse-of-discretion" standard, the Court will address these matters elsewhere in this memorandum.

Layes v. Mead Corp., 132 F.3d. 1246, 1251 (8th Cir. 1998); Kolosky v. Unum Life Ins. Co. of America, 182 Fed.Appx. 607, 609 (8th Cir. 2006)(*quoting* Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 76 F.3d. 896, 900 (8th Cir. 1996)).

The Court has carefully reviewed the Administrative Record and finds that it discloses nothing irregular in defendant Unum's gathering and review of the substantive evidence.

Firstly, plaintiff was informed by letter numerous times the provisions of the policy applicable to the determination of her eligibility for long-term disability benefits. She was informed numerous times of Unum's concerns regarding the medical records provided, and what objective medical evidence was required and why Unum needed such evidence. Plaintiff was represented by an attorney throughout her claim process who presumably would have been explaining to her the denial letters. She was in contact with numerous physicians throughout the claims process who presumably would have answered any questions she had about the contents of the denial letters regarding additional medical information. This is not a case in which Unum unreasonably expected plaintiff to guess what evidence would satisfy it. The denial letters specifically identified and requested additional clinical evidence supporting plaintiff's claim for long-term disability benefits pursuant to the subject plan. *See*, Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d. 833, 840 (8th Cir. 2006). The Court has reviewed the denial letters and finds that they are sufficiently self-explanatory.

As far as defendant Unum assisting her financially or otherwise to secure further medical testing, plaintiff has provided no authority for contending that Unum was obligated, under the plan or otherwise, to consider plaintiff's financial status and provide, at its cost, further medical testing to support plaintiff's claim. The Administrative Record shows numerous constant visits to doctors by the plaintiff. There is no evidence in the Administrative Record or before this

Court as to why plaintiff was unable to enlist the aid of any one of these doctors in securing the testing that was repeatedly referred to in the denial letters.

Plaintiff also argues that Unum failed to conduct an independent review by a physician "of the same caliber" as Dr. Saltan. Apparently, plaintiff questions the ability of Dr. Head, a board-certified occupational medicine physician, to offer her opinion on plaintiff's work-environment induced asthma. Plaintiff fails to point to any evidence that calls into question the expertise of Dr. Head personally or of a doctor who specializes in occupational medicine to offer an opinion on the condition of alleged work-environment induced asthma. *See*, Wakkinen, at 582-83. Furthermore, a plan administrator is not required to give more deference to a treating doctor's opinion over that of the reviewing doctor's opinion; or, to accept outright the treating doctor's assessment over that of the reviewing doctor's. Weidner v. Federal Express Corp., 492 F.3d. 925, 930 (8th Cir. 2007) *citing* Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003); Rutledge v. Liberty Life Assurance Co. of Boston, 481 F.3d. 655, 660 (8th Cir. 2007) *citing* Groves v. Metro. Life Ins. Co., 438 F.3d. 872, 875 (8th Cir. 2006). The fact that Unum made its repeated denial determination(s) based upon Dr. Head's opinion(s) does not suggest that the decision was made without reflection or judgment or that the decision was the product of arbitrariness or whim. *See*, Kolosky, at 609-10.

Finally, in support of her generalized conclusion that defendant Unum has engaged in procedural irregularities, plaintiff submits a law review article[21] referenced by the Court in Glenn. This article in turn relies heavily upon the Report of the Targeted Multistate Market Conduct Examination, which outlines a number of concerns that state examiners had with the claims processing procedures of certain insurance companies, including defendant Unum. *See*, Russell

---

[21]Langbein, **Trust Law as Regulatory Law**, 101 Nw. U.L Rev. 1315 (2007).

v. Unum Life Insurance Co. of America, 2006 WL 2456119 (E.D.Ark., August 22, 2006)(providing an excellent summary of the Multistate Report).  The Court has reviewed the law review article and finds that neither it, nor the referenced Multistate Report, in and of themselves, provide any evidence that plaintiff was denied long-term disability benefits due to a conflict or any procedural irregularity.  The Langbein law review article, and even the Multistate Report, may have raised concerns about defendant Unum's practices in the past, but they are not evidence of any wrongs committed by defendant Unum presently in reviewing plaintiff's claim.

Plaintiff has failed to provide any evidence in the Administrative Record showing that any alleged procedural irregularity was so "egregious" that this Court has a "total lack of faith in the integrity of the decision making process" or that defendant Unum's investigation of plaintiff's claim was so biased as to establish a conflict of interest requiring application of a less deferential standard of review.  Accordingly, the Court concludes that Unum's denial of benefits determination is entitled to a deferential review for abuse of discretion.

### Denial of Long-Term Benefits

Under an abuse of discretion standard, the plan administrator's decision will not be disturbed if it is "reasonable".  "We measure reasonableness by whether substantial evidence exists to support the decision, meaning `more than a scintilla but less than a preponderance.'" Wakkinen, at 583 *citing* Woo, at 1162.  Only the evidence that was before the plan administrator when the decision(s) was made will be considered, and the decision will stand if a reasonable person could have, not would have, reached a similar decision.  Wakkinen, at 583 *citing* Phillips-Foster v. Unum Life Ins. Co., 302 F.3d. 785, 794 (8th Cir. 2002).  Furthermore, the reviewing court cannot substitute its own opinion or weighing of the evidence for that of the plan

administrator.  Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d. 1174, 1180 (8th Cir. 2001);

Farley v. Arkansas Blue Cross and Blue Shield, 147 F.3d. 774, 777 (8th Cir. 1998).

Under the terms of the Plan, a participant is eligible for long-term disability benefits only if the participant is limited, by sickness or injury, from performing the material and substantial duties of his/her regular occupation.  Furthermore, the Plan defines "regular occupation" as that which is normally performed in the national economy as opposed to how the work tasks are performed for a specific employer or at a specific location.

The Administrative Record clearly shows that Unum considered opinions offered by plaintiff's several treating physicians, including Dr. Sultan, and conducted multiple thorough reviews of her entire claim file.  Unum concedes (for purposes of the summary judgment motions), that plaintiff was diagnosed with asthma and reactive airway disease.  The issue is not with the diagnosis but rather with the cause of plaintiff's medical condition.

Plaintiff contends that Unum never explained its reasons for denying her claim, or in the alternative, should have explained to her what qualifies as "objective medical evidence" and that on its own, obtained such evidence.  In essence, plaintiff argues that the burden was on Unum to obtain the medical evidence it deemed necessary to grant plaintiff's request for long-term disability benefits.  She opines that Unum's insistence that she provide the "objective evidence" to support her contention that her disabling medical condition was due to her work environment denied her a "full and fair review".  This argument is without merit.

Unum several times pointed out to plaintiff the applicable definitions under the Plan for determining her eligibility.  Plaintiff's voluminous medical records all suggest that she could not work at PBTD's facility, but not that she could not work as an office manager generally.  Both Dr. Davis and Dr. Sultan concluded that plaintiff had "chemical sensitivity" and that it was made

worse by her work environment, but neither physician ever identified the allergic or irritant triggers at her workplace. In fact, at one point, her allergies were considered "seasonal" and included trees, grass, and a host of other such allergens. Dr. Head repeatedly stated that the specific "components" that exacerbated plaintiff's condition cannot be identified based on the Administrative Record because none of plaintiff's doctors ever stated what exactly in her workplace was triggering her "reactive airway disease". There was no objective medical evidence in the Administrative Record to support plaintiff's treating physician's conclusions that her specific work location was causing her symptoms. It was not unreasonable for Unum to reject these conclusionary opinions.

Furthermore, Dr. Head repeatedly noted for plaintiff the type of objective medical evidence that was missing from the Administrative Record. Plaintiff was put on notice several times of what she needed to provide to substantiate her claim as required under the Plan. The Administrative Record clearly shows that Unum explained repeatedly why such evidence was needed. It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence. Pralutsky, at 839 *citing* McGee v. Reliance Standard Life Ins. Co., 360 F.3d. 921, 924-25 (8th Cir. 2004). Unum's communications with plaintiff and/or her attorney support its contention that it was not disputing the diagnosis but rather needed substantiation of the extant of plaintiff's disability and objective evidence that allergic or irritant triggers in her workplace were exacerbating her illness. This was not an impossible level of proof, in fact Dr. Sultan noted that further testing should have been done. It was not Unum's responsibility to order an independent medical examination or testing when plaintiff's evidence supporting her claim was continually facially insufficient. Rutledge, at 661.

The Administrative Record reasonably shows that plaintiff's purported inability to continue working as an office manager at the PBTD facility due to unidentified environmental factors at the facility does not constitute a disability within the meaning of Unum's policy. At best, plaintiff has shown that she has a diagnosis of asthma and reactive airway disease which she (and her doctors) believe are attributable to a host of seasonal allergens, as well as unidentified irritants at her workplace. It was reasonable for Unum to insist upon objective medical evidence to substantiate plaintiff's disability as attributable to specific irritants at her workplace and so severe that she could not return to PBTD as an office manager.

Furthermore, even if plaintiff had provided such evidence, she still failed to provide evidence that she could not perform the material and substantial duties of an office manager as it is "performed in the national economy". This was not an after-the-fact determination as plaintiff contends. Unum repeatedly cited to this provision in the policy to plaintiff and her attorney. There simply is no objective evidence in the Administrative Record that plaintiff is unable to perform her duties as an office manager in a work environment other than PBTD. Plaintiff argues that Unum should have obtained vocational evidence in order to deny her benefits. Once again, plaintiff offers no authority, either in caselaw or under the terms of the Plan, wherein Unum was obligated to hire a vocational expert to determine how the job of office manager is performed in the national economy and/or why plaintiff is so severely disabled as to be unable to perform her job in another work environment.

Plaintiff's claim was initially reviewed thoroughly by Unum's in-house claims personnel, then reviewed three (3) times on appeal by Unum's appeal specialist and their independent medical examiner. Plaintiff was provided with detailed denial letters each time informing her of

the reasons for the denial. Unum consistently stood by its initial denial decision each time. Plaintiff was accorded a full and fair review as required by ERISA.

Given the definitions under the Plan for determining plaintiff's eligibility for long-term disability benefits, and the lack of objective evidence in the Administrative Record showing that any specific allergens or irritants in plaintiff's workplace exacerbated her condition so as to render her unable to perform her job as an office manager not only at PBTD but in the "national economy", the Court finds that Unum consistently provided plaintiff and her attorney with a reasonable explanation for the denial of long-term disability benefits, and that the denial was supported by substantial evidence in the Administrative Record. The denial of benefits was not "arbitrary and capricious" as it was supported by more than a scintilla of evidence in the Administrative Record. Although Unum was operating under a conflict of interest when it denied plaintiff long-term disability benefits, the consideration of the Administrative Record as a whole indicates that Unum did not abuse its discretion.

Dated this   13th   day of April, 2009.

_____
UNITED STATES DISTRICT JUDGE